IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| Terry Wagner, | ) | |
| | ) | |
| Petitioner, | ) | No. 15-cv-11204 |
| | ) | |
| v. | ) | Judge John J. Tharp, Jr. |
| | ) | |
| John Varga, Warden, Dixon Correctional Center, | ) ) ) | |
| | ) | |
| Respondent. | ) | |

**MEMORANDUM OPINION AND ORDER**

Petitioner Terry Wagner is serving a 36-year sentence in the custody of the respondent following his 2001 convictions for first degree murder and concealment of a homicide. The convictions arise from a December 30, 1998 dispute among acquaintances that, inflamed by drugs, alcohol, and racism, escalated to the killing of John Banks. Wagner seeks a writ of habeas corpus pursuant to 28 U.S.C. § 2254, contending that his trial counsel was ineffective and that the state withheld exculpatory evidence in violation of *Brady v. Maryland*, 373 U.S. 83 (1963). For the reasons discussed below, the Court denies Wagner's petition and declines to issue a certificate of appealability.

**BACKGROUND**

After a bench trial, Judge DiMarzio of the Circuit Court of Kane County convicted Terry Wagner of first-degree murder and unlawful concealment of a homicidal death. *People v. Wagner*, No. 2-01-01289 at 1 (Ill. App. Ct. Oct. 21, 2003), Resp.'s Ex. A, ECF No. 23-1 (order affirming conviction on direct appeal). Wagner received a sentence of 30 years for the murder, and 6 years for the concealment, to be served consecutively. *Id.*.

Wagner waived his right to a jury trial after a colloquy in which Judge DiMarzio informed him of the substance of the right he was waiving. At trial, several of the petitioners' friends and family members who were present at the scene of the murder testified for the state. Wagner also took the stand. The relevant testimony is summarized below.

Wilbur Lash, Wagner's brother-in-law, testified as follows. He had previously been convicted of one drug offense. Trial transcript at 6, Resp.'s Ex. K part 13, ECF No. 23-23.[1] On December 30, 1998 at about 8:00 PM, Lash went to Wagner's sister's house to "party," taking a gun with him. *Id.* at 18-22. When he arrived, he placed the gun on a table in the living room. *Id.* at 23. Wagner and Carlos Marquez were present when Lash arrived. The victim, John Banks, arrived about a half hour later. *Id.* at 19. Sharena Wagner (the petitioner's niece[2]) and Gladys Martinez came to the apartment approximately half an hour after Banks. *Id.* at 20. Several of those present, including Lash, got high on crack cocaine. *Id.* John Banks began spewing racist invective, angering Wagner, who is African American, and everyone else present. *Id.* at 24. Banks said "he was going to kill some n*****s with a stick," which prompted Wagner, Lash, and Marquez to try and force him to leave the apartment *Id.* at 80. They pushed him partially out of the door, but Banks forced his way back in. *Id.* This tussle occurred "quite a bit" of time before the shooting. *Id.* at 85. According to Lash, Banks was behaving uncharacteristically; he was typically quiet, but that evening he was "real aggressive." *Id.* at 81.

Banks eventually joined Sharena Wagner and Gladys Martinez in the kitchen. *Id.* Shortly thereafter, Sharena yelled for her uncle from the kitchen: "Terry, come and get John, he's bothering

---

[1] Documents in the state court record and Wagner's submissions are not reliably paginated; accordingly, citations to those materials will refer to the page number of the ECF pdf document rather than to the internal pagination included in the documents.

[2] To avoid confusion, the petitioner will be referred to as Wagner; his niece as Sharena.

2

me." *Id.* at 33. Wagner jumped up and went toward the kitchen. Lash picked up the gun from the table, and Wagner succeeded in wresting the gun from Lash's hands after a brief struggle. *Id.* at 40-41. Lash initially followed Wagner into the kitchen, but then turned around to go back into the living room. *Id.* at 44. Lash heard a gunshot while his back was turned towards Wagner. *Id.* He turned back around and saw Banks holding his chest, and Wagner holding the gun. *Id.* at 48. In a recorded statement given to police, Lash related that after the first shot, he said to Wagner, "what did you do, man?" Wagner responded, "I told that motherfucker." *Id.* at 66. Lash then walked back into the living room and, about five seconds later, heard another shot. *Id.* at 72. When he turned once again to see what happened, he saw Banks kneeling on the kitchen floor, and Wagner holding the gun. *Id.* Lash left the apartment about 15 minutes after the shooting; about 20 minutes after his departure, Wagner phoned Lash and asked for help moving the body. *Id.* at 72.

Sharena Wagner testified that soon after she arrived at the apartment, she was seated at the kitchen table with John Banks and Gladys Martinez. *Id.* at 99. Banks was saying "he's against black people," and then he drew a swastika on a napkin and asked if she knew what it was. *Id.* Angry and scared, Sharena screamed for her uncle. *Id.* Everyone came into the kitchen, and Terry Wagner and others told Banks to leave and shoved him out the door, though Banks pushed his way back in. *Id.* at 100. Banks then walked to the kitchen table and grabbed a spoon. *Id.* Lash pulled out a gun. *Id.* at 101. Terry Wagner told Sharena and Gladys to leave the kitchen. *Id.* The two women went into the living room, and a few minutes later, heard two shots. *Id.* at 102. Sharena ran into the kitchen, where she saw that Banks had fallen from his chair and was lying on the ground with his eyes rolling back into his head. *Id.* at 103-105. Gladys Martinez's testimony was largely the same as Sharena Wagner's.

3

Carlos Marquez testified that early in the evening, he, Wagner, and Banks all went to buy crack cocaine. *Id.* at 198, 200. Both Banks and Wagner had been drinking and using crack. *Id.* at 224. When the three had finished buying drugs and returned to Wagner's sister's apartment, Wilbur Lash was present, and the four of them smoked crack. *Id.* at 200. Sharena Wagner and Gladys Martinez showed up and then went into the kitchen, along with Banks. *Id.* at 202. Marquez heard Sharena yell from the kitchen for her uncle.. Terry Wagner and Marquez went into the kitchen and Marquez pushed Banks out of the house, closing the door. *Id.* at 205. Banks pushed the door open and reentered the house. *Id.* Marquez turned away from Wagner. After turning away, he heard Wagner say "That's it" and then he heard two gunshots. *Id.* at 206. Terry Wagner then put the gun in Marquez's hand and asked Marquez to get rid of it. *Id.* at 207-208. Marquez took the gun, rode downtown on his bicycle and threw the gun into the Fox river. *Id.* at 208-09.

Marquez then rode his bike home. About half an hour later, Wagner arrived in Bank's car and asked Marquez to help him dispose of the body. *Id.* at 210-211. The two men drove back to the apartment and loaded Banks's body into the trunk of Banks's car. *Id.* at 212. After using the car for more trips to buy drugs, Marquez and Terry eventually abandoned it on the west side of Aurora. *Id.* at 217. Marquez was charged with concealment of a homicide, reached a plea agreement with the State, and was sentenced to jail and probation. *Id.* at 218. After that offense but before Wagner's trial, Marquez had also been charged with residential arson and felony trespass to residence. *Id.* at 219.

Leopold Butler, who had previously been convicted of four felonies, testified that he remembered being at the apartment that evening along with Wagner, Sharena, Gladys Martinez, Lash, Marquez, and Banks. *Id.* at 240, 243. Banks and Sharena were in the kitchen, and Butler heard Sharena shout. *Id.* at 244. Lash and Wagner then got into an argument because Wagner

4

wanted the gun. *Id.* at 250. Butler had said in a taped interview with the police that, during this argument, Wagner said "I'm tired of John's shit." *Id.* at 252. Wagner and others walked into the kitchen, and then Butler heard a shot, though he did not see who fired the first shot. *Id.* at 255. He saw Wagner fire the second shot at Banks, and then saw Banks grab the side of his head as he fell to the ground. *Id.* at 260-61.

Two detectives also testified, describing Wagner's confession on January 10, 1999, when he said that he had shot Banks to protect a female relative. *See* Order on Post-conviction Review, *People v. Wagner*, 2015 Il App (2d) 121189-U ¶¶ 13-14, Resp.'s Ex. H, ECF No. 23-8. The Coroner also testified, describing the victim's fatal injuries: one gunshot that entered on the left side of Banks's neck, and another that entered behind his right ear. Trial transcript, Resp.'s Ex K. part 12 at 395, 306, ECF No. 23-22. According to the coroner, Banks could have survived for a maximum of one hour after being hit by these shots. *Id.* at 305.

Wagner took the stand and testified that, at the time of the shooting, he was addicted to crack cocaine. *Id.* at 234-243. He had known Banks for about three years; they had both used drugs together. *Id.* at 236. On December 30, 1998, he had been using drugs the entire day. *Id*. When John arrived that evening, the two were drinking vodka and smoking crack. *Id.* at 238. Wagner was extremely high. *Id.* at 242. Banks was "acting crazy," saying he hated "n*****s, Mexicans, he hate Jews." *Id.* at 239. He was not acting like the John that Wagner knew. *Id.* At the conclusion of his testimony, Wagner apologized to the Banks family "for the incident happening." *Id.* at 245.

In closing arguments, defense counsel Larry Levy focused almost entirely on Wagner's intoxication on the day of the shooting, contending that Terry Wagner did not have the requisite intent for first-degree murder. Trial transcripts at 256-268, Resp.'s Ex. K part 12, ECF No. 23-22. Judge DiMarzio found Wagner guilty of first-degree murder and unlawful concealment of a

5

homicide. Trial Transcript at 397, ECF No. 23-23. In doing so, he expressly rejected an involuntary intoxication defense, and while the defense had not raised the issue in closing, the judge also found that Wagner had not acted in self-defense: "John Banks was unarmed and had made no furtive or suggestive gestures towards the defendant or anyone else in the room." *Id.* at 395.

## Procedural History

New defense counsel represented Wagner for the purpose of filing an amended motion for a new trial, Kathleen Colton. Colton argued that Wagner had received ineffective assistance of counsel at his trial, because, among other things, Levy had not argued that Wagner acted in self-defense or in defense of a dwelling. Larry Levy took the stand in a hearing on the motion, and Colton confronted him about his failure to put evidence before the trial court regarding Banks's violent tendencies. *Id.* at 492-496 Colton questioned him about his failure to elicit testimony from Sharena Wagner regarding an incident before the murder in which John Banks pushed her onto a bed and got on top of her. She also pressed Levy on his failure to obtain an order of protection that John Banks's mother secured against her son in September of 1998. *Id.* at 492-93. Colton also pointed out that Levy "had information that John Banks had been… thrown out of the house and then had re-entered in… a violent manner," *Id.* at 501, and asked why Levy had not argued that Wagner had acted in defense of a dwelling, a defense available in Illinois. *Id.*; 720 ILCS 5/7-2(a). Levy responded, "I believe that was one of the key issues that I felt should be raised and should have been raised by me at trial." *Id.* at 501. Judge DiMarzio denied the motion, finding that "Mr. Levy asserted the defenses that the evidence permitted him to assert," and that the victim "was not shot while making a violent or tumultuous entry," as Illinois' defense-of-dwelling statute requires. *Id.* at 576. Moreover, the victim's violent background would not have overcome the "overwhelming evidence" that Wagner had not acted in self-defense. *Id.* at 576-577.

6

Wagner appealed his conviction and the appellate court affirmed. *People v. Wagner*, No. 2-01-1289 (Ill. App. Ct. 2003), Resp.'s Ex. A at 1. In doing so, the appellate court rejected Wagner's arguments that, as relevant here, Larry Levy was ineffective for 1) failing to elicit testimony from Carlos Marquez, Gladys Martinez, and Sharena Wagner that would have supported a defense-of-dwelling defense; 2) for failing to produce evidence regarding Banks's violent history, *Wagner*, No. 2-01-1289 at 9-10; and 3) coercing Wagner into waiving his right to a jury trial. The appellate court held that Levy's performance was not deficient, and that Wagner was not prejudiced by the alleged errors. The court also held that Wagner had knowingly, intelligently, and voluntarily waived his right to a jury trial. Wagner filed a pro se petition for leave to appeal (PLA) with the Illinois Supreme Court, again arguing that Levy provided ineffective assistance. PLA 14-20, Resp.'s Ex B, ECF No. 23-2. The Illinois Supreme Court denied Wagner's PLA on January 28, 2004. Order denying PLA, Resp.'s Ex. C, ECF No. 23-3.

Wagner timely pursued post-conviction relief in the state courts.[3] He argued, among other things, that his trial counsel was ineffective for failing to investigate witnesses that would have testified about Banks' violent past and for failing to elicit testimony that would have supported a defense-of-dwelling defense. Resp.'s Ex. H ¶¶ 42, 47. He also asserted that the state committed a *Brady* violation by failing to disclose the criminal history of several witnesses, and by failing to disclose information related to Banks' violent past. *Id.* at ¶¶ 28, 38. The appellate court rejected these arguments, and the Illinois Supreme Court denied his petition for leave to appeal this decision on September 30, 2015.

---

[3] Wagner filed a pro se post-conviction petition on March 30, 2004; that petition was not finally resolved until January 26, 2015. See 2015 IL App (2d) 121189-U.

7

This petition under 28 U.S.C. § 2254 followed on December 11, 2015. Wagner filed a supplemental petition on December 31, 2015. ECF No. 5. At Wagner's request, his petition was held in abeyance pending resolution of appeals of the denial of a post-judgment motion pursuant to 735 ILCS 2-1401(f) and of a motion for leave to file a successive post-conviction petition. The § 2-1401 appeal process ended when the Illinois Supreme Court denied leave to appeal on March 29, 2017; the motion for leave to file a successive post-conviction petition was denied by the Illinois appellate court on June 29, 2020. While the petition for leave to file successive post-conviction petitions was still pending, Wagner requested that the stay be lifted after his counsel filed a motion to withdraw pursuant to *Pennsylvania v. Finley*, 481 U.S. 551 (1987) (state need not employ *Anders* procedures in connection with withdrawal of post-conviction counsel in absence of good faith arguments for relief). Wagner filed a second supplemental petition on July 8, 2019, ECF No. 50.

**DISCUSSION**

Under 28 U.S.C. § 2254(d)(1)-(2), a federal court may grant a writ of habeas corpus to an incarcerated petitioner where the state court judgment was either "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or "based on an unreasonable determination of the facts in light of the evidence presented." 28 U.S.C. § 2254(d)(1)-(2). Before reaching that inquiry, the Court considers whether the state courts had a full and fair opportunity to consider the petitioner's constitutional arguments; if they have not, the claim is procedurally defaulted and cannot be reviewed by a federal court. *Johnson v. Pollard*, 559 F.3d 746, 751 (7th Cir. 2009). A procedural default also occurs where the state court considered a claim but rejected it on an independent and adequate state law ground. *Coleman v. Thompson*, 501 U.S. 722, 728-29 (1991).

8

Wagner claims that his trial counsel was ineffective and that the state failed to disclose exculpatory evidence in violation of *Brady v. Maryland*, 373 U.S. 83 (1963). Specifically, he argues that his trial counsel was ineffective for: 1) coercing him into waiving his right to a jury trial, 2) failing to investigate four witnesses—Gloria Fultz, Blenda Howard, Karen Wagner, and Sharena Wagner—who would have testified about the victim's violent tendencies, and 3) for failing to elicit testimony from Carlos Marquez, Gladys Martinez, and Sharena Wagner, that would have supported a defense-of-dwelling defense. Wagner contends that the state violated *Brady* by failing to disclose 1) the criminal histories of several state's witnesses, and 2) information related to Banks's prior acts of violence.

The Court first addresses Wagner's claims that his trial lawyer provided ineffective assistance and holds that these claims were either procedurally defaulted or that the Illinois court system reasonably applied federal law. In the following section, the Court finds Wagner's *Brady* claims to be without merit. Finally, the Court rejects Wagner's claim that there was insufficient proof supporting his conviction of unlawful concealment of a homicide and concludes his claim that he was sentenced under an unconstitutional statute is untimely.

I. **Ineffective Assistance of Counsel**

Ineffective assistance claims are governed by *Strickland v. Washington*, 466 U.S. 668, 690 (1984), in which the Supreme Court held that a lawyer provides ineffective assistance where 1) counsel's performance fell below an objective standard of reasonableness and 2) but for counsel's errors, there was a reasonable probability of acquittal. To prevail on his claims, Wagner must show that Illinois' courts unreasonably applied this standard. 28 U.S.C. § 2254(d)(1).

A. **Jury Waiver**

Wagner argues that his trial counsel, Larry Levy, was ineffective because he coerced Wagner into waiving his right to a jury trial. Petition for Habeas Corpus 8, ECF No. 7. Levy,

9

Wagner contends, was "predisposed" to trying the case as a bench trial because of his health problems. *Id.* Levy also told Wagner that he would lose because he would face conviction by a racist jury.[4] *Id.* at 9. Because of counsel's advice, Wagner avers his waiver was involuntary "due to fear and coercion." *Id.*

Before Wagner's trial, the judge held a colloquy with Wagner to ensure that his election of a bench trial was knowing, intelligent, and voluntary. Trial Transcript 289-290, Ex. K part 12 to Resp.'s Answer, ECF No. 23-22. During that colloquy, the judge explained that in a jury trial, twelve jurors would have to unanimously find that Wagner was guilty beyond a reasonable doubt. *Id.* at 289. The judge asked Wagner whether he was waiving his right because of any threats or promises; Wagner said no. *Id.* at 290. Wagner affirmed that his decision to waive a jury trial was free and voluntary, and that he was 33 years old and had a 10th grade education. *Id.* Wagner also signed a written waiver, which Judge DiMarzio accepted at the same time. *Id.*

On direct review, the Illinois appellate court found that Wagner's waiver was made knowingly, voluntarily, and intelligently. Resp.'s Ex. A at 13. This is not an unreasonable conclusion and this Court cannot disturb it. *See U.S. v. Johnson*, 306 Fed. Appx. 305, 308 (7th Cir. 2009) ("voluntariness can be inferred from circumstances such as a colloquy in which the defendant unequivocally acknowledges his desire to waive the right to a jury trial[.]"); *Thoel v. Leibach,* 2002 WL 1990702 (N.D. Ill. 2002) (holding that petitioner's claim that counsel was ineffective for advising a bench trial was "clearly without merit" where the petitioner waived his

---

[4] Wagner asserts that, while testifying at the hearing on Wagner's motion for a new trial, Levy "did not deny" that he advised Wagner "that the state was going to pick twelve people from this area and they are going to look at you, that n****r who just killed a white man and put him in the trunk of a car… they're not going to care about the circumstances you've been under[.]" Petition at 9. Contrary to Wagner's assertion, Levy did deny saying this. Transcript, Resp.'s Ex. K part 13 at 471.

10

right to a jury trial in a colloquy with the trial judge.). Wagner claims his counsel was ineffective because he coerced him into choosing a bench trial, but the Illinois appellate court reasonably found that there was no coercion.

### B. Counsel's Failure to Investigate the Victim's Violent Past

Wagner argues that his trial counsel was ineffective for failing to investigate several witnesses who would have provided information about Banks's violent past. Petition at 11-13. He produced four affidavits from Gloria Fultz, Blenda Howard, Karen Wagner, and Sharena Wagner, all of whom report incidents in which Banks behaved violently towards them. *Id.* at 13. In each affidavit, in addition to reporting Banks's violence, the affiants say that they contacted Larry Levy before trial to provide this information, but Levy never followed up with them. *Id.* Wagner says these witnesses' accounts would have supported a self-defense theory, Levy's failure to follow up with them means his representation was objectively deficient, and that if Judge DiMarzio had heard from these witnesses, Wagner would have been acquitted.

On post-conviction review, the Illinois appellate court rejected Wagner's argument, concluding that Levy's decision not to investigate these witnesses could have been the product of sound trial strategy. Resp.'s Ex. H, ¶ 48. This determination was based on an analysis of Illinois law. The court explained that information about a victim's violent tendencies is admissible to show either that the defendant's knowledge of the victim's violent tendences affected the defendant's perceptions and reactions to the victim, or to support a defendant's version of events where there are conflicting accounts. *People v. Lynch*, 470 N.E.2d 1018, 1020 (1984). The appellate court noted that Wagner took the stand during his trial, but at no point did he reveal that Banks had been violent in the past. Resp.'s Ex. H. ¶ 48. In fact, he testified that on the night of the shooting, Banks was acting differently than he normally did. This testimony was consistent with that of other witnesses, including Wilbur Lash. Trial Transcript, ECF No. 23-23 at 81 ("he was not acting like

11

he usually acts"). This Court also notes that Wagner, in the statement he gave after direct and cross examination, did not mention any previous acts of violence by Banks, including an incident, described by Blenda Howard in her affidavit, in which Banks assaulted Wagner in 1997. Petitioner's Ex. 15, ECF No. 7. Given this evidence, Wagner's counsel could have made the reasonable determination that information about Banks's violent past was inadmissible under *Lynch* because Wagner denied that any knowledge of Banks's past violence affected his perceptions. Resp.'s Ex. H ¶ 48. The state court did not apply *Strickland* unreasonably; rather, its determination was based on an analysis of Illinois law, and "a federal court cannot disagree with a state court's resolution of an issue of state law." *Miller v. Zatecky*, 820 F.3d 275, 277 (7th Cir. 2016); *see also Sennholz v. Strahota*, 720 Fed. Appx. 569, 571 (concluding that a state court's determination that defense counsel's performance was not deficient based on state rules of evidence is binding on a federal court).

### C. Counsel's failure to elicit testimony in support of a defense-of-dwelling defense

Wagner contends that his trial counsel failed to elicit testimony from Carlos Marquez, Gladys Martinez, and Sharena Wagner that would have supported a defense that Wagner killed Banks in defense of his dwelling, a defense made available by an Illinois statute. Petition at 15-17; 720 ILCS 5/7-2(a). Wagner produced affidavits in his post-conviction proceedings from Marquez and Martinez in which they state that Wagner shot Banks after the latter was pushed out of the apartment and forced his way back inside. Pet'r's Ex. 16-17.

Wagner obtained some support for this ineffective assistance claim from Levy's testimony at the hearing on the motion for a new trial. Wagner's new counsel pressed Levy on his failure to present a more fulsome defense-of-dwelling defense, given that Levy had information that Banks had been thrown out of the house and had forced his way back inside. Trial transcript 501-502, Ex. K part 13 to Resp.'s Answer, ECF No. 23-23. Levy admitted that this "was one of the key issues

12

that I felt should be raised and should have been raised by me at trial." *Id.* at 501. As Wagner's counsel pointed out at the hearing, Levy admitted that his performance was deficient in this regard. *Id.* at 502.

On post-conviction review, the Illinois Appeals Court focused on whether Wagner suffered prejudice due to Levy's failure to elicit such testimony and concluded that there was not a reasonable probability that Wagner would have been acquitted but for his counsel's shortcomings. Resp.'s Ex. H at ¶¶ 44-45; Resp.'s Ex. A at 2. First, Levy did elicit testimony at trial that Banks had forced his way back into the apartment shortly before his shooting—Marquez testified to that effect, as did Wilbur Lash. *See* Trial transcript, ECF No. 23-23 at 79, 226. The appellate court accordingly found that the evidence presented at trial was cumulative of that in the affidavits and would not have changed the outcome of the trial. Resp.'s Ex. H ¶ 455. Second, there was ample evidence adduced at trial that undermined the viability of a defense-of-dwelling defense: Lash testified on cross examination by defense counsel that "quite a bit" of time elapsed from the moment John pushed his way back in to the apartment and the moment Wagner fired the first shot. *Id.* at 86, and other witnesses testified that Wagner and Lash cleared the kitchen before confronting Banks with a gun. Resp.'s Ex A at 2.

Further, Judge DiMarzio weighed whether Wagner acted in self defense and determined that he did not, finding that "Banks was unarmed and had made no furtive or suggestive gestures towards the defendant or anyone else in the room." Trial Transcript, ECF No. 23-23 at 395. Based on the testimony of multiple witnesses, the judge found that Wagner said "I'm tired of John's shit" before shooting Banks and then said "I told that motherfucker" after the shooting. *Id.* at 394-395. Given the overwhelming evidence that Wagner had not acted in self-defense (or in defense of his dwelling), additional testimony about Banks forcing his way back into the apartment would not

13

have altered the outcome of trial. The Illinois appellate court did not unreasonably apply *Strickland* when it held that Wagner had not suffered prejudice because of Levy's performance.

**II.      *Brady* Claims**

    **A.      Undisclosed Convictions**

Wagner argues that the state committed a *Brady* violation because it failed to disclose:

    (1) Lash's May 2000 conviction for obstruction of justice,

    (2) Martinez's March 1999 conviction for possession of a stolen vehicle,

    (3) Butler's July 1999 conviction for DUI,

    (4) Butler's July 1999 conviction for unlawful possession of a controlled substance,

    (5) Marquez's August 2000 charge for felony trespass to residence,

    (6) Marquez's August 2000 indictment for residential arson, and

    (7) Marquez's August 2000 conviction for attempted obstruction of justice.

To begin, several of these convictions were disclosed at trial—numbers (1), (2), (5), and (6)—so Wagner has no claim with respect to those. Resp.'s Ex. H ¶ 39. That leaves both of Butler's convictions and Marquez's conviction for obstruction of justice.

On post-conviction review, the appellate court held that Butler's DUI conviction would not have been admissible under state law. Resp.'s Ex. H at ¶ 39. This determination, based on state law, cannot be revisited by a federal court. And Butler's controlled substance conviction was plainly not material. At the beginning of Butler's direct examination, the state elicited testimony from Butler that he had previously been convicted of at least four felony offenses in the past 10 years. Trial Transcript, ECF No. 23-23 at 240. Adding one more drug conviction to the mix would have done little to alter Judge DiMarzio's assessment of his credibility. Resp.'s Ex H at ¶ 39.

14

As for Marquez's obstruction of justice conviction, the appellate court on post-conviction review noted that there was nothing in the record indicating Marquez was sentenced to six months' extended probation for obstructing justice. *Id.* Wagner attaches an exhibit in support of his argument that Marquez was thus convicted, but the exhibit says nothing about the reason his probation was extended. Petitioner's Ex. 6, ECF No. 7. Moreover, even if Marquez's probation had been extended because he obstructed justice, that would be immaterial given that Marquez testified he had been convicted of felony trespass to residence and residential arson. As with Butler, there was sufficient impeaching evidence available to the factfinder to evaluate Marquez's credibility. The Court also notes that Wagner argues he was deprived of information that would have helped him more thoroughly attack Marquez's credibility, but he also presents a sworn statement from Marquez to support his *Strickland* claim. His attempt to have it both ways is not reasonable. The appellate court's application of *Brady*, on the other hand, was reasonable.

**B.      State's Failure to Disclose Evidence of Banks's Violent Past**

Wagner argues that the state committed an additional *Brady* violation by withholding evidence of Banks's propensity for violence: specifically, an order of protection that Banks's mother obtained against her son three months prior to the shooting, and Banks's mental health records. First Supplemental Petition 2-3, ECF No. 5. According to Wagner, this evidence would have corroborated testimony that Banks was behaving aggressively. *Id.* at 3.

The Illinois appellate court rejected this claim on state law grounds. Issues surrounding the order of protection and mental health records were raised in Wagner's post-trial motion; after the trial court denied his motion, Wagner failed to raise the issues in his direct appeal. Under Illinois law, that means that the issues were forfeited on post-conviction review. Resp.'s Ex H ¶ 30. When a state court deals with a claim on an independent and adequate state law ground, the claim is

15

procedurally defaulted. *See Coleman*, 501 U.S. at 729 ("This rule applies whether the state law ground is substantive or procedural.").

Furthermore, the appellate court took a belt-and-suspenders approach and concluded that, even if this argument was not forfeited, such evidence was immaterial because it was inadmissible. Resp.'s Ex. H ¶ 33. The order of protection and mental health records were inadmissible under Illinois law for the same reason that the affidavits about Banks's previous violent acts are inadmissible: neither Wagner nor anyone else testified that their perceptions of Banks on the night of the shooting were colored by their knowledge of his past acts. Resp.'s Ex. H ¶ 35. Rather, Wagner and others testified that he was acting differently than before—specifically, that Banks was acting more aggressively than he normally did. Illinois also allows for the admission of evidence about a victim's violent tendencies when there are conflicting accounts of what happened. *Lynch*, 470 N.E.2d. at 1020. There are no conflicting accounts about what happened, so the evidence would not have been admissible under that ground either. Resp.'s Ex. H ¶ 35. Accordingly, the state court's application of *Brady* was reasonable.

### III. Remaining Claims

Wagner includes two additional claims in his supplemental petitions. First, he contends that his Due Process rights were violated because he was convicted of concealing a homicide without sufficient proof. First Supplemental Petition 6, ECF No. 5. The statute under which he was convicted for this concealment, 720 ILCS 5/9-3.4, requires that the defendant knew the victim was dead at the time of concealment. Resp.'s Ex. H ¶ 51. Wagner points to testimony by the forensic pathologist who testified at his trial, who indicated it was possible Banks was still alive at the time Wagner and Marquez loaded his body into the trunk: "I would be surprised if [the victim] was alive an hour after the infliction of the gunshot wound." *Id.*

16

The state omitted a response to this claim in its briefing, but the court has little trouble concluding that it lacks merit. The Illinois appellate court held that there was enough evidence for a rational trier of fact to conclude that Banks was dead at the time of concealment. *Id.* at ¶ 52. Marquez testified that he and Wagner placed the victim in the trunk of Banks's car half an hour to an hour after the shooting. Moreover, the court found that the concealment continued for hours until Wagner and Marques abandoned Banks's car with the victim's body in the trunk and that, at that time, "there was no doubt" that the victim was dead. *Id.* at ¶ 53. This was not an "unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2).

Wagner filed his Second Supplemental Petition on July 8, 2019. ECF No. 50. He brought a new claim in that petition, arguing that Illinois' Truth in Sentencing Act was unconstitutional as applied to him. The state responds that this claim is untimely under AEDPA's one-year statute of limitations. Answer to Second Supplemental Petition, ECF No. 52; 28 U.S.C. § 2244(d)(1). The Court agrees. When the Illinois Supreme Court denied Wagner's post-conviction PLA on September 30, 2015, tolling of the limitations period ended and, absent tolling, the limitations period expired a year later on September 30, 2016. *Id.* at 3.

Wagner does not, and cannot, make a valid tolling argument. The proceedings on his § 2-1401 petition for relief from judgment did not toll the limitations period because the state court dismissed the petition as untimely. Resp. Exh. L, *People v. Wagner*, No. 2-14-0421 (Ill. App. Ct. Oct. 26, 2016). An untimely initiation of a state court collateral action does not toll the AEDPA statute of limitations period. *See Pace v. DiGuglielmo*, 544 U.S. 408, 413 (2005). Nor was the statute of limitations tolled while Wagner's appeal of the denial of the motion for leave to file a successive post-conviction petition remained pending; as the Respondent points out, Wagner had

17

30 days to file a timely notice of appeal from the denial of that petition, but he did not appeal until October 11, 2017, 520 days after the Kane County Circuit Court denied the motion on May 10, 2016. By the time Wagner appealed that denial, the statute of limitations had already run; there was nothing properly filed and pending in the state court during that period of more than a year.

Finally, although Wagner's original petition and first supplemental petition in this case were timely, neither mentioned this sentencing claim. The second supplemental petition followed on July 8, 2019, nearly three years after the limitations period expired. The first petition and its supplement did not toll the limitations period, and the sentencing claim does not relate back to these timely petitions. *Mayle v. Felix*, 545 U.S. 644, 650 (2005) (holding that an amended petition does not relate back "when it asserts a new ground for relief supported by facts that differ in both time and type" from those in the original petition.).

\* \* \*

For these reasons, the Court denies Wagner's petition. Judgment will be entered for Respondent. Petitioner is advised that this is a final decision ending his case in this Court. A certificate of appealability will not issue as Wagner has failed to make a substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2). If Petitioner wishes to appeal, he must file a notice of appeal with this Court within thirty days of the entry of judgment, *see* Fed. R. App. P. 4(a)(1), and seek a certificate of appealability from the Court of Appeals.

Date: September 24, 2021

John J. Tharp, Jr.
United States District Judge